## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TIFFANY SMITH ) | |
| ) | CIVIL ACTION FILE NO. |
| Plaintiff, ) | _____ |
| ) | |
| v. ) | **JURY TRIAL REQUESTED** |
| ) | |
| INTERNATIONAL ) | |
| REHABILITATIVE SCIENCES, ) | |
| INC., D/B/A RS MEDICAL, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES

Plaintiff Tiffany Smith, by and through undersigned counsel, hereby brings this action against Defendant International Rehabilitative Sciences, Inc., d/b/a RS Medical ("Defendant").

## NATURE OF THE ACTION

1. This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, alleging that Defendant: (1) violated the FLSA by failing to pay Plaintiff overtime wages; (2) violated the FLSA by failing to pay Plaintiff the minimum wage for certain hours worked; (3) interfered with Plaintiff's FMLA

1

rights; and (4) retaliated against Plaintiff for exercising rights protected under the FMLA.

## PARTIES

2. Plaintiff is a citizen of the State of Georgia, and she resides in Cobb County.

3. Defendant is a privately held Washington corporation, registered as International Rehabilitative Sciences, Inc., d/b/a RS Medical, with its principal office located at 14001 S.E. First Street, Vancouver, Washington 98684. Defendant may be served with process by delivering a copy of the complaint and a summons to its registered agent, CT Corporation System, located at 1201 Peachtree Street, Atlanta, Georgia 30361.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the claims stated herein pursuant to 28 U.S.C. § 1331 (federal question).

5. Defendant is subject to personal jurisdiction in the State of Georgia for purposes of this lawsuit because it transacts business in the State of Georgia.

6. Defendant is an employer covered by the FLSA because: (1) it is an employer engaged in interstate commerce; (2) its employees (including Plaintiff)

are engaged in interstate commerce; and (3) it has at least $500,000 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A).

7.  Defendant is an employer covered by the FMLA because it is an employer engaged in commerce, and it "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

8.  Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(1)(a), venue is proper in this Court because the events giving rise to Plaintiff's claims occurred within the Atlanta Division of the United States District Court for the Northern District of Georgia.

## COUNT I: FAILURE TO PAY OVERTIME

9.  In October of 2005, Defendant hired Plaintiff for the position of "Account Manager."

10. Plaintiff was an Account Manager for Defendant from October of 2005 until September 1, 2011.

11. As an Account Manager, Plaintiff was paid approximately $48,000 per year, plus commissions.

12. On September 1, 2011, Defendant promoted Plaintiff to the position of "Senior Account Manager."

13. As Senior Account Manager, Plaintiff's compensation was $60,000 per year, plus commissions.

14. Plaintiff worked as a Senior Account Manager until she went out on FMLA maternity leave on November 21, 2011.

15. One of Plaintiff's primary job duties as both Account Manager and Senior Account Manager was to meet with doctors and other medical professionals to promote Defendant's medical devices.

16. The medical devices promoted by Plaintiff were all prescription devices.

17. A patient may not legally obtain one of Defendant's devices without a prescription from a doctor.

18. Defendant's rules and policies prohibited Plaintiff from selling Defendant's medical devices directly to a patient.

19. During her employment, federal law prohibited Plaintiff from selling prescription devices, such as Defendant's medical devices, to patients.

20. Plaintiff did not sell Defendant's medical devices to doctors.

21. Plaintiff regularly worked more than 40 hours per week while employed by Defendant as an Account Manager and Senior Account Manager.

22. Plaintiff generally worked Monday through Friday (the "Workweek").

23. Plaintiff also performed work on the weekends.

24. During the Workweek, Plaintiff's workday usually started at or before 8:00 A.M.

25. During the Workweek, Plaintiff regularly worked through lunch.

26. During the Workweek, Plaintiff finished the daytime portion of her work for Defendant between 4:30 P.M. and 6:30 P.M.

27. During the Workweek, after completing the daytime portion of her work, Plaintiff performed additional compensable work while at home ("Homework").

28. Plaintiff's Homework included reading and responding to work-related emails.

29. Plaintiff's Homework included receiving and placing work-related phone calls.

30. Plaintiff's Homework included completing work-related paperwork.

31. Plaintiff's Homework included completing computer and product training.

32. Plaintiff also performed Homework on the weekends.

33. Plaintiff generally performed a minimum of 7-10 hours of Homework per week.

34. The sum total of Plaintiff's hours worked during the Workweek and the hours she spent on Homework almost invariably exceeded 40 per week.

35. However, Plaintiff never received overtime payments while working for Defendant.

36. Defendant failed to maintain accurate time records for Plaintiff.

37. Defendant willfully violated the FLSA because it failed to pay Plaintiff overtime without having a reasonable basis for such failure.

38. Defendant willfully violated the FLSA because Defendant failed to maintain accurate time records for Plaintiff.

39. Pursuant to 29 U.S.C. § 216(b), Defendant is liable to Plaintiff for three years of unpaid overtime wages, an equal amount as liquidated damages, reasonable attorney's fees, and costs of litigation.

## COUNT II: FAILURE TO PAY THE MINIMUM WAGE

40. Defendant authorized Plaintiff to take FMLA leave from December 1, 2011, to February 23, 2012.

41. Plaintiff did not receive any compensation from Defendant for work performed during the period of FMLA leave.

42. During her leave period, Plaintiff performed compensable work for which Defendant failed to compensate her.

43. For example, during her leave period, Plaintiff fielded phone calls from patients.

44. For example, during her leave period, Plaintiff advised her co-workers that she continued to receive phone calls from patients.

45. For example, during her leave period, Plaintiff received orders, which she then forwarded to co-workers.

46. Pursuant to 29 U.S.C. § 216(b), Defendant is liable to Plaintiff for all hours she worked during her FMLA period multiplied by the minimum wage ($7.25), an equal amount as liquidated damages, reasonable attorney's fees, and costs of litigation.

## FACTS IN SUPPORT OF PLAINTIFF'S FMLA CLAIMS

47. At all relevant times to this action, Plaintiff was an "eligible employee" of Defendant within the meaning of the FMLA, 29 U.S.C. §§ 2601-2654, and 29 C.F.R. § 825.110(d), in that she was employed by Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding the commencement of her FMLA leave period.

48. On or about September 1, 2011, Defendant promoted Plaintiff to the position of "Senior Account Manager."

49. Defendant promoted Plaintiff to the position of Senior Account Manager based on (1) her "current and expected contributions to RS Medical," (2) her ability to distinguish herself based on her ability to "grow and manage a significant, profitable business for RS Medical, and (3) her "positive energy, customer focus and teamwork" with her peers and the regional team.

50. A true and correct copy of Defendant's letter regarding Plaintiff's promotion is affixed hereto as Exhibit A.

51. At the time of Plaintiff's promotion to Senior Account Manager, Plaintiff was pregnant and her baby was due on December 1, 2011.

52. Before her promotion to Senior Account Manager, Plaintiff applied for FMLA leave.

53. Plaintiff informed RS Medical that her baby was due on December 1, 2011.

54. In a letter dated November 1, 2011, Defendant notified Plaintiff that it approved her request to take FMLA maternity leave from December 1, 2011, to February 23, 2012.

55. In the same letter, Defendant notified Plaintiff that if she returned to work immediately upon the expiration of her leave, or earlier, she would "be

reinstated to her former position or an equivalent position with the same pay, benefits, terms and conditions of employment."

56. A true and correct copy of the letter referenced in Paragraphs 55 and 56 is affixed hereto as Exhibit B.

57. Plaintiff went into labor earlier than expected and had her child on Monday, November 21, 2011.

58. Nevertheless, Plaintiff continued working until the commencement of her scheduled FMLA leave period.

59. Defendant did not modify the start or end dates of Plaintiff's approved FMLA leave period.

60. On January 4, 2012, Defendant sent a letter to Plaintiff notifying her that, effective January 1, 2012, Defendant had demoted her to the position of Patient Care Specialist.

61. A true and correct copy of the Defendant's letter demoting Plaintiff is affixed hereto as Exhibit C.

62. A Patient Care Specialist is an hourly position.

63. The compensation received by a Patient Care Specialist is lower than that received by an Account Manager or Senior Account Manager.

64. Of all positions in Defendant's regional sales force for the region encompassing Atlanta, Georgia, the Patient Care Specialist position receives the lowest level of compensation and has the lowest level of prestige and authority.

65. Defendant's demotion of Plaintiff from Senior Account Manager to Patient Care Specialist reduced her pay, authority, and status within the company.

66. At and before the expiration of Plaintiff's FMLA leave period, Plaintiff requested that Defendant reinstate her to the position of Senior Account Manager.

67. Defendant refused to reinstate Plaintiff to the position of Senior Account Manager.

## COUNT III: FMLA INTERFERENCE

68. Plaintiff adopts and incorporates Paragraphs 47 through 67 of her Complaint.

69. By demoting Plaintiff the position of Patient Care Specialist, Defendant denied Plaintiff a benefit to which she was entitled under the FMLA.

70. By refusing to reinstate Plaintiff to the position of Senior Account Manager, Defendant denied Plaintiff a benefit to which she was entitled under the FMLA.

71. Pursuant to 29 U.S.C. § 2617(a), Defendant is liable to Plaintiff for: (1) all wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA; (2) prejudgment interest; (3) an equal amount as liquidated damages; (4) reasonable attorney's fees; and (5) costs of litigation.

## COUNT IV: FMLA RETALIATION

72. Plaintiff adopts and incorporates Paragraphs 47 through 67 of her Complaint.

73. Plaintiff engaged in statutorily protected activities when she applied for and took FMLA maternity leave.

74. Plaintiff suffered an adverse employment action when she was demoted to the position of Patient Care Specialist on or about January 1, 2012.

75. Defendant's decision to demote Plaintiff was causally related to Plaintiff's statutorily protected activities.

76. Pursuant to 29 U.S.C. § 2617(a), Defendant is liable to Plaintiff for: (1) all wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA; (2) prejudgment interest; (3) an equal amount as liquidated damages; (4) reasonable attorney's fees; and (5) costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant, and asks for relief as follows:

a. That Plaintiff receive judgment against Defendant for her unpaid wages dating back to three years from the date that this action is filed;

b. That Plaintiff receive judgment for liquidated damages equal to the amount of her unpaid wages;

c. That Plaintiff receive judgment against Defendant for costs and attorney's fees in a sum that shall be proven at trial;

d. That Plaintiff be reinstated to her position as Senior Account Manager;

e. That Plaintiff receive judgment for all wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA;

f. That Plaintiff receive judgment for an equal amount as liquidated damages;

g. That Plaintiff receive prejudgment interest on her damages under the FMLA;

h. That Plaintiff receive judgment for reasonable attorney's fees and costs of litigation.

i. That Plaintiff receive such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.


Respectfully submitted on March 21, 2012

|  |  |
|---|---|
| | /s/   Jeff Kerr |
| **MAYS & KERR LLC** | Jeff Kerr |
| 229 Peachtree Street NW | Ga. Bar No. 634260 |
| International Tower | Suite 980 | jeff@maysandkerr.com |
| Atlanta, GA 30303 | |
| Telephone:  (404) 410-7998 | John L. Mays |
| Facsimile:   (877) 813-1845 | Ga. Bar No. 986574 |
| | john@maysandkerr.com |
| | |
| **KEEGAN LAW FIRM, LLC** | Marcus G. Keegan |
| 1418 Dresden Drive | Ga. Bar No. 410424 |
| Suite 240 | mkeegan@keeganfirm.com |
| Atlanta, Georgia 30319 | |
| Telephone:  (404) 842-0333 | |
| Facsimile:   (404) 920-8176 | |

Attorneys for Plaintiff